UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| TERRY L. FORNASH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 10-205-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| UNUM LIFE INSURANCE COMPANY | ) | **MEMORANDUM OPINION** |
| OF AMERICA, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for judgment filed by Plaintiff Terry L. Fornash ("Fornash") and Defendant Unum Life Insurance Company of America ("Unum"). [Record Nos. 42, 45] Unum denied Fornash's claim for long-term disability benefits when it determined that his injuries were incurred as a result of a failed suicide attempt and, therefore, were excluded from coverage as "intentionally self-inflicted injuries." Fornash denies that he attempted to injure himself, and seeks reversal of Unum's decision.

Unum has moved the Court to affirm its decision to deny Fornash's claim for benefits because, it claims, its decision was supported by substantial evidence. For the reasons discussed below, the Court will grant Unum's motion for judgment and deny the relief sought by Fornash.

I.   **BACKGROUND**

Fornash began working at the Square D Company (now, Schneider Electric U.S.A., Inc.) in 1977. His last position was as a service technician. As an employee at Square D, Fornash

participated in the company's long-term disability plan ("Plan"), funded by a group insurance policy issued by Unum. The relevant language of the Plan provides that it "does not cover any disabilities caused by, contributed to by, or resulting from your: . . . intentionally self-inflicted injuries." [Record No. 20, p. 80]

On August 19, 2008, Fornash was injured at his home. His wife called 911 after she found him on the floor in their bedroom, bleeding from his head, nose, and left ear. [Record No. 28, p. 57] Fornash was hospitalized and treated for traumatic brain injury. [Record No. 42, p. 1] The parties offer differing stories as to the cause of this injury. According to Unum, Fornash's fall was the result of a failed attempt at suicide by hanging. Fornash, however, insists that he did not attempt to injure or kill himself. Instead, Fornash asserts that he fell "when he slipped off a bucket that he was standing on while working on the garage." [Record No. 25, p. 24]

Fornash filed a claim with Unum and was awarded short-term disability benefits dating back to August 19, 2008. [Record No. 45, p. 9] In December 2008, Unum began investigating Fornash's claim for long-term disability benefits. [Record No. 20, pp. 110-11] On October 30, 2009, Unum terminated payment based on the determination that his disability was caused by self-inflicted injuries. [Record No. 40, pp. 38-42] Fornash appealed the decision on November 4, 2009, and Unum denied the appeal on December 3, 2009. [Record No. 40, pp. 63-64; Record No. 41, pp. 6-9]

## II.     LEGAL STANDARD

### A.     Arbitrary and Capricious Standard of Review

Generally, a challenge to an ERISA denial of benefits is reviewed *de novo*. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). However, if the plan in question grants the Plan Administrator ("Administrator") the discretionary authority to determine benefit eligibility, then the arbitrary and capricious standard of review is applied. *Id.* Here, the parties do not dispute that the Plan grants such discretion to the Administrator. [Record No. 42. pp. 5-6; Record No. 45, p. 13]

The arbitrary and capricious standard is the "least demanding form of judicial review." *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 342 (6th Cir. 2011) (internal quotation marks omitted). When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious. *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006). Essentially, "the Plan Administrator's decision should be rational in light of the [P]lan's provisions." *Farhner*, 645 F.3d at 342 (internal quotation marks omitted).

Although this standard is highly deferential, "the arbitrary-and-capricious standard . . . does not require [that the court] merely to rubber stamp the administrator's decision." *Glenn v. Metro. Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004)). Rather, the Court reviews "the quality and quantity of the medical evidence on both sides of the issue" to determine whether the Administrator's decision was arbitrary and capricious. *Id.* (quoting *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 168 (6th Cir. 2003)). Finally, the "ultimate issue in an ERISA denial of benefits case is not

whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious." *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002).

If the Administrator's decision is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence," then it will be upheld. *Glenn*, 461 F.3d at 666. This standard "equates to the substantial-evidence standard used to review Social Security disability decisions." *Creech v. Unum Life Ins. Co. of N. Am.*, 162 F. App'x 445, 448 (6th Cir. 2006). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). While substantial deference is given, the standard employed in these cases does not permit a selective reading of the record. Instead, "[s]ubstantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations and internal quotation marks omitted).

The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (citations and internal quotation marks omitted). If supported by substantial evidence, the Administrator's decision must be affirmed even if the Court would decide the case differently and even if the plaintiff's position is also

supported by substantial evidence. *See Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989).

### B. Conflict of Interest Analysis

The parties disagree regarding the extent to which the conflict of interest presented in this case should impact the Court's analysis. The deferential "arbitrary and capricious" standard is "tempered by any possible conflict of interest where the Plan Administrator both determines eligibility and funds the Plan." *Farhner*, 645 F.3d at 342 (internal quotation marks omitted). There is a conflict of interest when a plan authorizes an administrator "both to decide whether an employee is eligible for benefits and to pay those benefits." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007) (citation omitted). The existence of a conflict of interest is a factor that must be taken into account in determining whether Unum's decision was arbitrary and capricious. *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292-93 (6th Cir. 2006). In evaluating this conflict, the Court must "look[] to see if there is evidence that the conflict in any way influenced the plan administrator's decision." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006). For instance, a conflict of interest is weighed more heavily "where circumstances suggest a higher likelihood that it affected the benefits decision." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008) (describing, as an example, a situation "where an insurance company administrator has a history of biased claims administration"). However, Fornash provides no evidence to support the conclusion that Unum's conflict of interest actually

motivated its denial of benefits.[1] The mere existence of this conflict does not render Unum's decision arbitrary and capricious. Accordingly, while this Court bears in mind that a conflict of interest exists, it does not give great weight to that factor.

## III. ANALYSIS

Fornash argues that he is "entitled to a long-term disability retirement benefit" and that the Court should overturn Unum's denial of his long-term disability benefits. He argues that Unum's denial of his administrative appeal violated 29 U.S.C. § 1133, which governs administrative claims procedures in ERISA cases. He disagrees with Unum's conclusion that his injuries were self-inflicted and asserts that this decision was arbitrary and capricious.

### A. Unum's Denial of Fornash's Administrative Appeal Did Not Violate ERISA.

Fornash argues that his appeal was denied too soon. He maintains that Unum denied his appeal without providing him "any opportunity to provide evidence substantiating his appeal." [Record No. 42, p. 2] He essentially claims that because he had 180 days to request an appeal, he should have been given that same period of time to supplement his appeal. [*Id.*, p. 9 ("Plaintiff still had more than 150 days to supplement his initial appeal.")] However, Unum was very clear about its appeals process in its October 30, 2009 letter denying Fornash's long-term

---

1 Other than simply noting that Unum is "both the decision-maker and payor under the insurance policy, Fornash's only argument that the conflict of interest was a significant factor in the decision to deny long-term benefits is that Unum "did not consult with the treating physicians in order to clarify discrepancies in the records" during its file review. [Record No. 42, p. 7] However, the administrative record shows that Unum contacted Dr. Ringer, Dr. Goddard, Dr. Cone, and Dr. Goderwis. [Record No. 23, pp. 26-33; Record No. 24, pp. 33-40, 113-27, 120]

benefits. Fornash was provided 180 days from the date of the letter to file an appeal and instructed as follows:

> You will need to submit a written letter of appeal outlining the basis for your disagreement. To ensure handling of your appeal without delay, please include any additional information you would like considered. This information may include written comments, documents, or other information in support of your appeal.

[Record No. 40, p. 41] He was further advised that Unum is "committed to making an appeal decision within 45 days" after receiving the letter of appeal. [*Id.*]

Although Fornash's letter of appeal indicated that he intended to "supplement the basis for disagreement," nothing in Unum's letter suggested that it would delay its decision based on such a vague request for time. [*Id.*, p. 64] Moreover, it is unclear what evidence Fornash might have submitted. In his letter of appeal, he requested "all documents, records and other information relevant" to his claim for benefits; he seems to have wanted this information for the purpose of "supplement[ing] the basis for disagreement," which suggests that he had no intention of submitting additional information, but rather intended to submit additional arguments. [*Id.*, pp. 63-64] Unum never indicated that it would consider any arguments or evidence not presented in, or contemporaneous with, the "written letter of appeal," nor did it indicate that it would delay rendering its decision until receipt of such extraneous evidence. [*Id.*, pp. 38-42] Because Unum did not deny Fornash a "reasonable opportunity" for a "full and fair review" of its decision, this is not a proper basis for remanding this action for further proceedings. *See* 29 U.S.C. § 1133.

### B. Unum's Decision Was Not Arbitrary and Capricious.

Fornash challenges as arbitrary and capricious Unum's conclusion that his injuries were self-inflicted. He "categorically denie[s] attempting suicide." [Record No. 42, p. 2] Fornash argues that any indication otherwise in the record is speculation because there were no witnesses to the events that led to his injury. [*Id.* ("Terry Fornash was alone at the time of his accident.")] Unum was entitled to rely on the evidence presented by the record as a whole, and the absence of an eyewitness account does not itself preclude Unum from determining that Fornash intentionally injured himself. *Cf. Mathis v. Mahle, Inc.*, 165 F. App'x 457, 461 (6th Cir. 2006) (noting that it "remains unclear whether the family witnessed Mathis's actions" but nonetheless finding that the family accounts describing an attempted suicide, together with the rest of the evidence, provided substantial evidence for the conclusion that his injuries were self-inflicted); *Racknor v. First Allmerica Fin. Life Ins. Co.*, 71 F. Supp. 2d 723, 727-30 (E.D. Mich. 1999) (affirming Administrator's determination that death was the result of suicide despite the lack of witnesses to the incident). Unum's reliance on evidence other than an eyewitness account of the events that caused Fornash's injury, especially when there was other significant evidence in the record, is not enough to render the decision arbitrary and capricious.

Fornash also points out that none of the medical records indicated an injury to his neck or throat. [*Id.*, p. 5] However, Dr. Brown, the psychiatrist who reviewed the record during the administrative appeal, provided a reasonable explanation for this fact: "I would not necessarily expect . . . documentation of any superficial trauma, given the circumstances." [Record No. 40, p. 108] Unum considered the fact that this information was lacking from the record and provided

a "reasoned explanation" why this fact was not determinative or Fornash's claim. *See Elliott*, 473 F.3d at 617. Therefore, the gap in the record concerning injuries to Fornash's neck does not make Unum's decision arbitrary and capricious.

Fornash contends that Unum "relie[d] on inconclusive, unreliable evidence and ignore[d] contrary evidence" and, therefore, the decision was not supported by substantial evidence. [Record No. 42, p. 8] In support of this assertion, Fornash argues that the medical records are "scattered, inconsistent and at odds with other medical records also contained in the record." [*Id.*, p. 2] Unum admits that the exact facts in the medical records were not always entirely consistent but claims that this is "hardly surprising in an emergency situation," and it notes that the "hospital physicians uniformly concluded that Mr. Fornash had injured himself in a failed attempt to commit suicide by hanging." [Record No. 45, p. 4] The record does contain some conflicting accounts regarding the circumstances surrounding Fornash's injuries, but these inconsistencies alone do not justify the conclusion that Unum acted unreasonably in using the accounts to make its decision. *See Mathis*, 165 F. App'x at 461. The medical records differ regarding relatively minor details that do not fundamentally alter the circumstances portrayed in the administrative record. For instance, some of the records note correctly that Fornash was discovered in his bedroom, while others indicate that he was found in the garage or basement. [*E.g.*, Record No. 23, pp. 55, 108, 123-124] Similarly, the medical reports disagree about whether the cord was found in the garage or the bedroom, and whether it was tied in a noose when found. [*E.g.*, Record No. 23, pp. 55, 95, 108] However, Fornash does not deny the existence of the cord, nor the fact that it was found hanging from the garage ceiling after his

accident. [Record No. 42, pp. 3-5] As a result, these discrepancies are not so significant as to make Unum's reliance on the overall impression created by the records unreasonable.

Unum points to Fornash's history of alcohol abuse, anxiety, and depression to support its conclusion that he attempted suicide on August 19, 2008. [*Id.*, pp. 2-3] Most of this personal history was provided to medical personnel by Fornash's wife immediately following his injury. However, Mrs. Fornash now denies that she was the source of this information. She also denies having suggested that the accident was the result of an attempted suicide. Glen Flagler, the field consultant who investigated Fornash's claims, wrote:

> The claimant's spouse denied that she ever told EMS personnel or hospital personnel that the claimant tried to commit suicide. . . . I read to her from pertinent medical records which state she advised personnel that the claimant talked about suicide in the past and tried to hang himself in the past. However, she insisted that she never told EMS or hospital personnel this.

[Record No. 24, p. 99] The story that Mrs. Fornash told medical personnel is clearly recorded in the medical records. [*E.g.*, Record No. 23, p. 95 ("Wife reports husband was inebriated 8/18 + expressed 'I don't feel like I'll last much longer.' Also, reports that pt talks about suicide when he's 'drunk' + that he'd tried to hang himself before but couldn't when he thought about the family.")] In light of these reports, it was not unreasonable for Unum to reject Mrs. Fornash's repudiation of her earlier story. This is especially true considering Mrs. Fornash's expressions of concern to medical personnel "about insurance covering [her] husband[']s care because of [the] method of injury." [*Id.*, p. 96] This evidence calls into question the credibility of Mrs. Fornash's later assertions. Therefore, Unum was justified in relying on her earlier accounts of her husband's personal history and in using that history to substantiate its decision

that he was injured while attempting suicide. In other words, based on the record *as a whole*, there was substantial evidence for Unum's decision.

Finally, the Court rejects Fornash's contention that the Plan's terms are vague and ambiguous. He argues that even if "it were to be found . . . that Mr. Fornash was attempting suicide, his intention would have been to end his life, not to intentionally inflict any injuries upon himself" and, therefore, the provision denying him benefits is vague and ambiguous. The term "self-inflicted injury" is not ambiguous. *See, e.g.*, *Morton v. Smith*, 91 F.3d 867, 872 (7th Cir. 1996) (holding that the term "intentionally self-inflicted injury" can reasonably be interpreted as "the natural and probable consequence of an intentional act"); *Holsinger v. New England Mut. Life Ins. Co.*, 765 F. Supp. 1279, 1281 (E.D. Mich. 1991). A person who commits suicide intentionally injures himself in order to bring about his own death; the fact that the injury is the means to an end does not render the injury unintentional. This argument is not persuasive.

## IV. CONCLUSION

The record does not support Fornash's contention that Unum's decision was arbitrary and capricious. Instead, there is substantial evidence to support Unum's decision, and the decision was the result of a reasoned and deliberative process. Accordingly, it is hereby

**ORDERED** as follows:

(1) Fornash's motion for judgment [Record No. 42] is **DENIED**.

(2) Unum's motion for judgment [Record No. 45] is **GRANTED**.

(3) The decision of Unum will be **AFFIRMED** by separate judgment entered this date.

This 5th day of October, 2011.



Signed By:
*Danny C. Reeves* DCR
United States District Judge